1
2
3
4                    UNITED STATES DISTRICT COURT
5                    NORTHERN DISTRICT OF CALIFORNIA
6
7
8
   THERESA CAMERANESI, et al.,
9
                   Plaintiffs,              No. C 12-0595 PJH
10
         v.                                 **ORDER RE CROSS-MOTIONS FOR**
11                                          **SUMMARY JUDGMENT**
   U.S. DEPARTMENT OF DEFENSE,
12 et al.,
13                 Defendants.
   _____/
14

15         This is an action for declaratory and injunctive relief brought under the Freedom of

16 Information Act, 5 U.S.C. § 552 ("FOIA").  The parties' cross-motions for summary

17 judgment came on for hearing before this court on February 13, 2013.  Plaintiffs appeared

18 by their counsel Duffy Carolan and Kent Spriggs, and defendants appeared by their

19 counsel Ann Marie Reding.  Having read the parties' papers and carefully considered their

20 arguments and the relevant legal authority, the court hereby GRANTS plaintiffs' motion and

21 DENIES defendants' motion as follows.

22                      **THE FREEDOM OF INFORMATION ACT**

23         "Congress enacted FOIA to overhaul the public-disclosure section of the

24 Administrative Procedures Act."  Milner v. Dep't of Navy, __ U.S. __, 131 S. Ct. 1259, 1262

25 (2011); see also Department of Air Force v. Rose, 425 U.S. 352, 361 (1976) (discussing

26 Congress' creation of FOIA).  Congress recognized that no statute effectively provided for

27 disclosure to the public by the "hundreds of [governmental] departments, branches and

28 agencies which are not clearly responsible to the people."  SDC Dev. Corp. v. Mathews,

542 F.2d 1116, 1119 (9th Cir. 1976).  Congress believed that "the public as a whole has a right to know what its Government is doing."  Id. (quoting S.Rep. No. 813, 89th Con., 1st Sess. 5 (1965)).

Congress enacted FOIA to "clos[e] the loopholes which allow agencies to deny legitimate information to the public."  U.S. Dep't of Justice v. Tax Analysts, 492 U.S. 136, 150 (1989) (citations and quotations omitted).  FOIA's purpose was thus to "ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed."  John Doe Agency v. John Doe Corp., 493 U.S. 146, 152 (1989) (quotations omitted).  Accordingly, FOIA mandates a "strong presumption in favor of disclosure."  U.S. Dep't of State v. Ray, 502 U.S. 164, 173 (1991).  "[D]isclosure, not secrecy is the dominant objective of the act."  Rose, 425 U.S. at 361.

However, Congress also contemplated that some information can legitimately be kept from the public through the invocation of certain exemptions to disclosure.  Yonemoto v. Department of Veterans Affairs, 686 F.3d 681, 687 (9th Cir. 2012); see Tax Analysts, 492 U.S. at 150-51 (agency must disclose records to "any person" unless the records may be withheld pursuant to one of the enumerated exemptions listed in § 552(b)); see also Lion Raisins, Inc. v. U.S. Dep't of Agriculture, 354 F.3d 1072, 1079 (9th Cir. 2004) (Supreme Court's broad interpretation of FOIA requires full agency disclosure except where specifically exempted).

FOIA includes nine statutory exemptions.  See 5 U.S.C. § 552(b)(1)-(9).  These statutory exemptions "must be narrowly construed."  Lion Raisins, 354 F.3d at 1079 (quoting John Doe Agency, 493 U.S. at 152); see also Milner, 131 S.Ct. at 1265-66 (FOIA strongly favors openness and "broad disclosure" with narrowly construed exceptions). Moreover, even when material falls within one of FOIA's nine exemptions, an agency must disclose "any reasonably segregable portion of a record . . . after deletion of the portions which are exempt."  5 U.S.C. § 552(b).  An agency invoking an exemption bears the burden of proving that it applies.  Yonemoto, 686 F.3d at 688.

2

**BACKGROUND**

Plaintiffs Theresa Cameranesi and Judith Liteky seek access to information regarding students and instructors at the Western Hemisphere Institute for Security Cooperation ("WHINSEC"), which is operated by the U.S. Department of Defense ("DOD") and was formerly known as the U.S. Army School of the Americas ("SOA"). Originally established by the U.S. Army in 1946 as the Latin American Training Center, SOA was run by the United States Army and housed at Fort Benning, Georgia. It trained military leaders from countries throughout the Western Hemisphere in combat and various counter-insurgency techniques. See Bourgeois v. Peters, 387 F.3d 1303, 1306 (11th Cir. 2004).

In 1990, the School of the Americas Watch ("SOA Watch"), a non-profit advocacy organization, was formed for the purpose of raising awareness of activities of SOA and in response the 1989 killing of six Jesuit priests, their housekeeper and her 16-year-old daughter in El Salvador, after it came to light that a majority of the individuals implicated in the murders were soldiers who had been trained at SOA. SOA Watch contends that the SOA bolstered military dictatorships by training their leaders how to kill, torture, and otherwise suppress their citizens. See id. Plaintiffs Theresa Cameranesi and Judith Liteky helped form the School of the Americas Watch San Francisco Research Group, a local adjunct of SOA Watch.

In 2000, SOA was replaced by WHINSEC, also located at Ft. Benning. See National Defense Authorization Act for Fiscal Year 2001, P.L. 106-398, § 911, 114 Stat. 1654, 2000 HR 4205, codified at 10 U.S.C. § 2166. WHINSEC provides professional education and training to eligible military, law enforcement, and civilian personnel of nations of the Western Hemisphere. In addition to foreign nationals, U.S. military, civilian, and contractor personnel attend WHINSEC as students or work as instructors.

The bill establishing WHINSEC also provided for the creation of a 14-member "Board of Visitors," composed of members of the Senate and House Armed Services Committees; representatives from the State Department, U.S. Southern Command, U.S. Northern Command, the U.S. Army Training and Doctrine Command ("TRADOC"); and six

1    members designated by the Secretary of Defense (including persons from academia and

2    the religious and human rights communities).  Id. § 2166(e).  The Board is tasked with

3    inquiring into the curriculum, instruction, physical equipment, fiscal affairs, and academic

4    methods of WHINSEC, and with reporting to the Secretary of Defense as to whether the

5    curriculum complies with U.S. laws and regulations, is consistent with U.S. policy goals

6    toward Latin America and the Carribean, and adheres to U.S. doctrine.  Id.

7           According to the Declaration of Lee A. Rials, a Department of the Army employee

8    and a Public Affairs Specialist for WHINSEC, the Board's annual report in the years since

9    2002 has shown that WHINSEC is performing its missions in an excellent manner, legally,

10   morally, and ethically.  In addition, since Fiscal Year ("FY") 2005, the DOD has provided

11   Congress (in classified format) names and other data for all WHINSEC students and

12   instructors.

13          Beginning in approximately 1994, the DOD disclosed to SOA Watch the names of

14   SOA students and instructors dating back to 1946.  Thereafter, through FY 2004, the DOD

15   routinely disclosed upon request the names of the students attending SOA/WHINSEC, and

16   their countries of origin.  From these disclosures, SOA Watch created a data base

17   containing the names, countries of origin, and courses taught or taken by the students and

18   instructors.  This database contains more than 60,000 names, covering the period 1946 to

19   2004, when the government stopped its practice of publicly disclosing this information.

20   Using the prior disclosures, SOA Watch has created reports linking names from the data

21   base to human rights abuses described in various governmental and media documents.

22          Plaintiffs contend that the analysis and review of the human rights records of SOA

23   and WHINSEC graduates provided by SOA Watch, and other nonprofits such Amnesty

24   International, based on the prior disclosures, has been utilized by members of Congress

25   seeking to make decisions about the school and other foreign policies.

26          Plaintiffs also assert that this information is relevant to the analysis of whether and to

27   what effect the government is vetting individual officers and noncommissioned officers prior

28   to admitting them to WHINSEC, and monitoring military units for human rights certification

4

United States District Court

For the Northern District of California

in accordance with the 1997 Foreign Operations Appropriations Act, which requires that U.S. assistance be denied to military "units" if the Secretary of State has credible evidence of human rights abuses by that unit, and successive amendment to the Defense Appropriations Act, extending the same restrictions to training assistance to foreign military.[1]

WHINSEC opened in late 2001.  After that date, DOD continued to disclose the names of students and instructors, as it had with SOA.  According to plaintiffs, many members of Congress expressed the view that until a student at WHINSEC could be tied to a human rights violation, they were inclined to support the renamed school.  In response, the San Francisco Research Group of SOA Watch took the names of WHINSEC graduates and instructors previously disclosed by DOD and matched those names with human rights reports prepared by the U.S. Department of State and other groups.  The group's findings, which documented five cases where individuals were allowed to attend WHINSEC despite existing human rights records, were presented to the office of U.S. Rep. Jim McGovern. Plaintiffs assert that it was soon after this report to Rep. McGovern's office that DOD first reversed its longstanding practice of releasing the names of SOA and WHINSEC attendees.

On March 1, 2011, plaintiffs served a FOIA request on DOD and TRADOC, seeking access to "all documents that contain the names, ranks, branches, countries of origin, lists of courses taken or taught, and/or dates and years in attendance of students, instructors, and guest instructors" at WHINSEC from FY 2005-2010, including "documents known as 'Student List,' 'Instructor List,' and 'Guest Instructor List.'"

On March 22, 2011, plaintiffs added a request for information about the military units of those attending WHINSEC, but also clarified that the request for "all documents" should be interpreted to mean simply "sufficient records to allow [plaintiffs] to learn the names,

---

[1] See Foreign Operations, Export Financing, and Related Programs Appropriations Act, 1998, Pub. L. No. 105-118, § 570, 111 Stat. 2386, 2429 (1997); Dep't of Defense and Full-Year Continuing Appropriations Act, 2011, Pub. L. No. 112-10, § 8085, 125 Stat. 38, 71 (2011).

United States District Court

For the Northern District of California

1    ranks, branches, countries of origin, lists of courses taken or taught, and the dates and

2    years in attendance of students, instructors, and guest instructors at WHINSEC" for FY

3    2005-2010.

4         On April 5, 2011, TRADOC responded to the FOIA request with some responsive

5    records.  Along with the letter, TRADOC sent what it referred to as "the responsive records,

6    located from the record search."  TRADOC indicated that portions of the records had been

7    redacted, that "the FOIA exemption that prohibits the information disclosure is cited," and

8    that the decision is considered "a partial denial of [the] FOIA request."  The only FOIA

9    exemption cited in the letter was Exemption 6, which exempts from disclosure matters that

10   are "personnel and medical files and similar files the disclosure of which would constitute a

11   clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).  The letter

12   asserted that "[t]here is no discretion in release of information/records that qualify for

13   withholding pursuant to [Exemption 6]."

14        According to plaintiffs, TRADOC's letter was accompanied by a disk containing 19

15   .pdf files that had apparently been converted from an Excel format.  None of the 19 files

16   contained any names of WHINSEC students or instructors or their military units.  Plaintiffs

17   contend that many of the files were transmitted without any indentifying information or title,

18   such that it was not possible to know what the information purported to represent.[2]

19   Plaintiffs contend that aside from a complete denial of access to the names and military

20   units of the students and instructors – the substance of the request – other information

21   requested was sometimes provided and sometimes withheld or missing from the files

22   produced.

23        On May 11, 2011, plaintiffs filed an administrative appeal of TRADOC's partial

24

25        [2]  According to the Declaration of Judith Liteky, when the Excel files were converted
26   into .pdf files, "much of the native formatting was lost such that cell information normally
     reflected in a single frame view of an Excel file was separated from other cell information in the
27   PDF."  Liteky Decl. ¶ 13.  To make sense of the information, one had to piece the latter half
     of the .pdf file together with the first half and "make assumptions as to the native format."  Id.
28   Liteky asserts that "the government's haphazard production compromises the information's
     integrity."  Id.

United States District Court

For the Northern District of California

1 denial of their request.  In their appeal, plaintiffs claimed that TRADOC's invocation of

2 Exemption 6 was not appropriate because the public's interest in disclosure of the names

3 and units of WHINSEC students and instructors outweighs the privacy interests, if any, of

4 those individuals in their names and units.

5 　　　Plaintiffs also asserted that TRADOC had failed to provide an index to the withheld

6 records, as required under Vaughn v. Rosen, 484 F.2d 820 (D.C. Cir. 1973) ("Vaughn

7 index").  A Vaughn index "identifies each document withheld and the statutory exemption

8 claimed for each document, and sets forth 'a particularized explanation of how disclosure of

9 the particular document would damage the interest protected by the claimed exemption."

10 Maricopa Audubon Soc'y v. U.S. Forest Serv., 108 F.3d 1089, 1092 n.1 (9th Cir. 1997)

11 (quoting Weiner v. F.B.I., 943 F.2d 972, 977 (9th Cir. 1991)).  The purpose of the index is

12 to "afford the . . . requester a meaningful opportunity to contest, and the district court an

13 adequate foundation to review, the soundness of the withholding."  King v. U.S. Dep't of

14 Justice, 830 F.2d 210, 218 (D.C. Cir. 1987).[3]

15 　　　On June 8, 2011, DOD denied the appeal, reasserting FOIA Exemption 6, but also

16 citing for the first time Exemption 3, which exempts from disclosure matters that are

17 "specifically exempted from disclosure by statute" if that statute either "requires that matters

18 be withheld from the public" or "establishes particular criteria for withholding or refers to

19 particular types of matters to be withheld."  5 U.S.C. § 552(b)(3).  DOD claimed that

20 Exemption 3 warranted withholding the information, based on the requirement in

21 § 1083 of the National Defense Authorization Act that DOD disclose the information, and

22 the provision that allows the Secretary to waive that requirement if warranted by the

23 "national interest."

24 　　　On February 6, 2012, plaintiffs filed the present action against DOD and TRADOC,

25 _____

26 　　　[3]  A Vaughn index is not required in every case.  For example, if the affidavit provided
by the agency is sufficient to show that the requested documents should not be disclosed, a
27 Vaughn index is not required.  See Weiner, 943 F.2d at 978 n.5.  As another example, if an
exemption is based on a general exclusion, which is dependent on the category of the
28 requested records rather than on the individual subject matters contained within each
document, a Vaughn index is unnecessary.  Id.

United States District Court

For the Northern District of California

1  seeking an order enjoining defendants from withholding the names and assigned military

2  units of students, instructors, and guest instructors at WHINSEC for the fiscal years 2005-

3  2010.  Each side now seeks summary judgment.

4       Plaintiffs argue that DOD cannot meet its heavy burden of proof under FOIA to

5  justify withholding the information plaintiffs have requested.  DOD contends that it properly

6  withheld the requested information pursuant to Exemption 3 and Exemption 6 of FOIA.

7                                    **DISCUSSION**

8  A.    Legal Standard

9       A party may move for summary judgment on a "claim or defense" or "part of . . . a

10  claim or defense."  Fed. R. Civ. P. 56(a).  Summary judgment is appropriate when there is

11  no genuine dispute as to any material fact and the moving party is entitled to judgment as a

12  matter of law.  Id.

13       FOIA cases are typically decided on motions for summary judgment.  Defenders of

14  Wildlife v. U.S. Border Patrol, 623 F.Supp. 2d 83, 87 (D.D.C. 2009); Bigwood v. U.S.

15  Agency for Int'l Dev., 484 F.Supp. 2d 68, 73 (D.D.C. 2007).  Because FOIA cases rarely

16  involve issues of disputed fact, the court need not utilize the typical summary judgment

17  standard.  Yonemoto, 686 F.3d at 688; Minier v. Central Intelligence Agency, 88 F.3d 796,

18  800 (9th Cir. 1996).  Instead, the court conducts a two-step inquiry.

19       First, the court weighs whether the agency has established that it fully discharged its

20  obligations under FOIA.  Zemansky v. U.S. E.P.A., 767 F.2d 569, 571 (9th Cir. 1985).  An

21  agency can establish this by showing that it conducted a search reasonably calculated to

22  uncover all relevant documents.  Id.; Weisberg v. U.S. Dep't of Justice, 705 F.2d 1344,

23  1350-51 (D.C. Cir. 1983).

24       If the agency meets this burden, the court then considers whether the agency has

25  shown that any information not disclosed falls within one of the FOIA exemptions.  Where

26  the government withholds documents pursuant to one of the enumerated exemptions, "the

27  burden is on the agency to sustain its action."  5 U.S.C. § 552(a)(4)(B); see Ray, 502 U.S.

28  at 173 (burden remains with agency when it seeks to justify redaction of identifying

8

United States District Court
For the Northern District of California

1  information as well as when it seeks to withhold entire document); see also Dobronski v.

2  F.C.C., 17 F.3d 275, 277 (9th Cir. 1994).  "A basic policy of FOIA is to ensure that

3  Congress and not administrative agencies determines what information is confidential."

4  Lessner v. U.S. Dep't of Commerce, 827 F.2d 1333, 1335 (9th Cir. 1987).  For this reason,

5  the courts do not give deference to a federal agency's determination that the requested

6  information falls under a particular FOIA exemption.  Carlson v. U.S. Postal Serv., 504 F.3d

7  1123, 1127 (9th Cir. 2007).

8      Thus, to prevail on a summary judgment motion in a FOIA proceeding, where the

9  underlying facts and possible inferences are construed in favor of a FOIA requester, an

10  agency must prove that it has adequately searched for documents and that any withheld

11  documents or information falls within one of the specified exemptions.

12  B.    The Parties' Motions

13      The dispute between the parties centers on whether the requested identifying

14  information was properly withheld under FOIA Exemptions 3 and 6.

15      1.    Exemption 3

16      Exemption 3 originally covered material "specifically exempted from disclosure by

17  statute."  Church of Scientology of Calif. v. U.S. Postal Serv., 633 F. 2d 1327, 1329 (9th

18  Cir. 1980).  In its current form, Exemption 3 permits agencies to withhold matters that are

19  "specifically exempted from disclosure by [a] statute" other than FOIA itself.  See 5 U.S.C.

20  § 552(b)(3).  To qualify, the statute must either

21      (A)(i) require[ ] that the matters be withheld from the public in such a manner
        as to leave no discretion on the issue; or

22

23      (ii) establish[ ] particular criteria for withholding or refer[ ] to particular types of
        matters to be withheld[.]

24  Id. § 552(b)(3)(A).[4]

25      "[O]nly explicit nondisclosure statutes that evidence a congressional determination

26

27      [4] A statute enacted after the OPEN FOIA Act of 2009, Pub. L. No. 111-83, 123 Stat.

28  2142, 2184 (2009), must also specifically cite to the relevant paragraph of FOIA.  5 U.S.C.
    § 552(b)(3)(B).

United States District Court
For the Northern District of California

1    that certain materials ought to be kept in confidence will be sufficient to qualify under the

2    exemption."  Wisconsin Project on Nuclear Arms Control v. U.S. Dep't of Commerce, 317

3    F.3d 275, 280 (D.C. Cir. 2003) (citation and quotation omitted); see also Church of

4    Scientology, 633 F.2d at 1329 (only "explicit nondisclosure statutes . . . will be sufficient to

5    qualify under the exemption").

6         When an agency relies on a statute to deny a FOIA request under Exemption 3, a

7    reviewing court must ask (1) whether the statute meets Exemption 3's requirements, and

8    (2) whether the information that was withheld falls within the statute's coverage.  Newport

9    Aeronautical Sales v. Dep't of the Air Force, 684 F.3d 160, 165 (D.C. Cir. 2012); Cal-

10   Almond, Inc. v. U.S. Dep't of Agriculture, 960 F.2d 105, 108 (9th Cir. 1992).

11        Here, DOD cites § 1083 of the National Defense Authorization Act of 2010 as the

12   exempting statute.  Section 1083 provides as follows:

13        (a) Disclosure –

14        (1) In General – The Secretary of Defense shall release to the public, upon
          request, the information described in paragraph (2) for each of fiscal years
15        2009 and 2010.

16        (2) Content – The information to be released under paragraph (1) shall
          include, with respect to the fiscal year covered, the entire name, including the
17        first, middle, and surnames, with respect to each student and instructor at the
          Western Hemisphere Institute for Security Cooperation.
18
          (b) Waiver – The Secretary of Defense may waive the requirement under
19        subsection (a) if the Secretary determines it to be in the national interest.

20   PL 111-84, § 1083, 123 Stat 2190, 2009 HR 2647 (2009).  DOD has not specified the

21   "national interest" that warranted waiving the requirement – but simply asserts that "the

22   particular criteria have been met because the Secretary of Defense exercised his waiver

23   authority over the requested information on June 16, 2010."

24        Plaintiffs argue that § 1083 does not qualify as an Exemption 3 statute because it

25   does not give complete discretion to withhold information, and does not establish "particular

26   criteria for withholding" or refer to "particular types of matters to be withheld."

27   Plaintiffs contend that federal courts have repeatedly rejected the "national interest" as a

28   sufficiently particularized criterion for purposes of Exemption 3.  In support, they cite

10

United States District Court

For the Northern District of California

1    American Jewish Congress v. Kreps, 574 F.2d 624 (D.C. Cir. 1978); and CNA Financial

2    Corp. v. Donovan, 830 F.2d 1132 (D.C. Cir. 1987).

3          In American Jewish Congress, the court determined that the government could not

4    invoke Exemption 3 pertaining to a provision of the Export Administration Act that permitted

5    the government to withhold foreign trade information about private corporations unless it

6    determined that the withholding was "contrary to the national interest." Id., 574 F.2d at 631.

7    The court considered that the "public interest" standard in the statute gave the government

8    carte blanche to determine whether or not to withhold information, which it stated was

9    "precisely the kind of situation that Exemption 3 was amended to avoid." Id.    Similarly, in

10   CNA, the court held that the Trade Secrets Act, which establishes penalties for the

11   disclosure of trade secrets, was not covered by Exemption 3 because it gave "the kind of

12   administrative carte blanche that Congress intended to curb by its amendment of

13   Exemption 3." Id., 830 F.2d at 1139.

14         An Exemption 3 statute's "identified class of nondisclosable matters" must be narrow

15   to meet the requirements of Exemption 3.  See Carlson, 504 F.3d at 1129; Lessner, 827

16   F.2d at 1336.  A statute purporting to give "total discretion" to restrict access to any of an

17   agency's investigatory files provides insufficient specificity to qualify for Exemption 3.  See

18   Church of Scientology, 633 F.3d at 1333.

19         Defendants argue that § 1083 qualifies as a statute for purposes of Exemption 3,

20   and the names of WHINSEC instructors and students for FY 2009 and 2010 falls within its

21   scope.  They also contend that § 1083 establishes "particular criteria for withholding"

22   information, because it authorizes the Secretary to withhold documents if it is doing so "in

23   the national interest."

24         Plaintiffs reiterate, however, that Exemption 3 does not apply because § 1083 does

25   not establish the required "particular criteria" for withholding the names of WHINSEC

26   instructors and students.  They also argue that defendants have ignored the cases plaintiffs

27   cited for the proposition that the use of "national interest" is an insufficiently particular

28   criterion for withholding information under FOIA, because such a standard would simply

                                              11

United States District Court

For the Northern District of California

1    grant the agency carte blanche to withhold any information it chose to.

2        Defendants respond that the Ninth Circuit's decision in Lessner provides support for

3    the Secretary's decision to withhold information regarding names and military units of

4    WHINSEC attendees based on "national interest."   In Lessner, the court held that a statute

5    providing for non-disclosure of information except when disclosure would be in the "national

6    interest" was an Exemption 3 statute because it contained sufficiently particularized criteria

7    and did not grant the agency excessive discretion.  Id., 827 F.2d at 1335-36.

8        The court noted that "[w]hether information is exempt from disclosure is a

9    Congressional determination, not an administrative one[;]" and that in determining whether

10   material is exempt under Exemption 3, "'a court must consider the underlying congressional

11   intent to exempt material from the FOIA.'"  Id. at 1335 (quoting Church of Scientology, 633

12   F.2d at 1330).  Where the district court finds that Congress intended that material be

13   exempted from FOIA, the court must determine "whether Congress has 'articulated

14   "particular criteria"' to guide the agency charged with administering the law."  Id.  If only

15   "very general benchmarks for secrecy" are set forth, the agency is delegated too much

16   discretion and the criteria of Exemption 3 cannot be met.  Id. (citations and quotations

17   omitted).

18       Defendants have effectively conceded that because § 1083 references only the

19   information for FY 2009 and 2010, Exemption 3 does not apply to the information for FY

20   2005, 2006, 2007, 2008, 2011, and 2012.  In addition, by its terms, § 1083 does not govern

21   disclosure of military units of students and instructors at WHINSEC.  Thus, the only

22   question is whether § 1083 qualifies as an Exemption 3 statute for FY 2009 and 2010 with

23   regard to disclosure of the names of WHINSEC students and instructors, and whether DOD

24   has met its burden.

25       The court is not persuaded that § 1083 qualifies as an Exemption 3 statute, primarily

26   because it does not provide any specific criteria for withholding information.  Section 1083

27   purports to give the Secretary of Defense unbounded discretion to disclose or withhold the

28   names of WHINSEC attendees for FY 2009 and 2010 in the "national interest," but provides

United States District Court

For the Northern District of California

1    no guidance whatsoever for the exercise of that discretion.

2         As noted above, Exemption 3 originally provided that "[t]his section does not apply to

3    matters that are . . . specifically exempted from disclosure by statute."  In <u>Administrator,</u>

4    <u>FAA v. Robertson</u>, 422 U.S. 255 (1975), the Supreme Court applied a broad interpretation

5    of Exemption 3 to include a statute which granted an agency almost unlimited discretion to

6    withhold documents.  In response, Congress amended the statute to preclude agencies

7    from avoiding FOIA disclosure provisions on general and nonspecific discretionary grounds.

8    <u>See</u> <u>Seymour v. Barabba</u>, 559 F.2d 806, 807 (D.C. Cir. 1977).

9         The amended text and its legislative history make clear that Congress did not
10        want the exemption to be triggered by every statute that in any way gives
          administrators discretion to withhold documents from the public. On the
          contrary, Congress intended exemption from the FOIA to be a legislative
11        determination and not an administrative one.

12   <u>Wisconsin Project</u>, 317 F.3d at 280 (quoting <u>Irons & Sears v. Dann</u>, 606 F.2d 1215, 1220

13   (D.C. Cir. 1979) (footnote omitted).  Put another way, a statute qualifies as a withholding

14   statute under Exemption 3 where "Congress ha[s] itself made the basic decision, and ha[s]

15   left to the administrator only the task of implementation."  <u>Am. Jewish Cong.</u>, 574 F.2d at

16   630.

17        However, even if § 1083 did qualify as an Exemption 3 statute, DOD has not met its

18   burden.  The "strong presumption" under FOIA is that information is to be disclosed, and it

19   is the burden of the federal agency to justify withholding information.  <u>See</u> <u>Ray</u>, 502 U.S. at

20   173.  Defendants argue that the statute at issue in <u>Lessner</u> – a statute providing for non-

21   disclosure of information except when <u>disclosure</u> would be in the "national interest" – uses

22   language that is "remarkably similar" to the language in § 1083 – which provides that "upon

23   request," the Secretary of Defense "shall release" the names of students and instructors at

24   WHINSEC, unless the Secretary determines that <u>non-disclosure</u> would be in the "national

25   interest."  The court finds, however, that apart from the fact that both statutes allow the

26   agency head to make a determination based on "national interest," the language and intent

27   of the two statutes are remarkably un-similar.

28        The statute at issue in <u>Lessner</u> presumed that certain information was to be exempt

13

United States District Court

For the Northern District of California

1    from FOIA, whereas the presumption is the opposite in this case, where disclosure is

2    presumptively mandated.[5]  In addition, the court in <u>Lessner</u> focused on whether the statute

3    at issue was an Exemption 3 statute, and then analyzed the legislative history to determine

4    the congressional intent (which was that certain material not be disclosed), but was not

5    concerned with whether the "national interest" language purported to grant unbridled

6    discretion to the agency.  Here, however, defendants have not provided any insights from

7    the legislative history behind § 1083 to support their position, and in addition, argue that the

8    statute gives the agency total discretion to determine whether it is in the "national interest"

9    to withhold the names of WHINSEC students and instructors.

10         In short, in <u>Lessner</u>, the statute plainly indicated a presumption that the information

11   will not be disclosed, whereas here, the statute clearly provides that the information is to be

12   disclosed <u>unless</u> the agency determines some national interest requires that it not be

13   disclosed.  Thus, the fact that the court in <u>Lessner</u> found that the court's ruling that "in the

14   national interest" was a sufficient "criteria" to disclose information is not persuasive in this

15   case – particularly given that up until 2005, DOD routinely released this information in

16   response to FOIA requests.

17         2.    Exemption 6

18         Exemption 6 permits an agency to withhold "personnel and medical files and similar

19   files the disclosure of which would constitute clearly unwarranted invasion of personal

20   privacy."  5 U.S.C. § 552(b)(6).  Exemption 6 is "intended to protect 'individuals from the

21   injury and embarrassment that can result from the unnecessary disclosure of personal

22   information.'"  <u>Bowen v. U.S. Food & Drug Admin.</u>, 925 F.2d 1225, 1228 (9th Cir. 1991)

23   (citation omitted); <u>see also</u> <u>Dobronski</u>, 17 F.3d at 277-78 (applying Exemption 6 to sick

24   leave records); <u>Van Bourg, Allen, Weinberg & Roger v. N.L.R.B.</u>, 728 F.2d 1270, 1273 (9th

25

26         [5]  The statute at issue in <u>Lessner</u> reflected a Congressional policy that the information
     <u>not be disclosed</u> unless the Secretary determined that disclosure would be in the public
27   interest, whereas § 1083 reflects a Congressional policy that the names of instructors and
     students for FY 2009-2010 <u>be disclosed</u> unless the Secretary determines that such disclosure
28   would not be in the national interest.

1   Cir. 1984) (applying Exemption 6 to names and addresses of employees eligible to vote for

2   a union).

3          The information that plaintiffs seek is not medical or detailed personnel information

4   regarding the students and instructors at WHINSEC.  During the course of the briefing on

5   this motion, defendants conceded that the information requested did not constitute "medical

6   files" and now also appear to have conceded that the information cannot be considered

7   "personnel files."  Thus, the court considers only whether the information qualifies as

8   "similar files."  The Supreme Court has broadly defined "similar" files in this context as

9   those containing "information which applies to a particular individual."  U.S. Dep't of State v.

10  Washington Post Co., 456 U.S. 595, 602 (1982); see also Bowen, 925 F.2d at 1228.  Lists

11  of names and addresses may meet that definition, so long as release of the information

12  requested would be a clearly unwarranted invasion of personal privacy.  Washington Post,

13  456 U.S. at 602.

14         Here, plaintiffs do not seek actual "files," but rather a listing of names of students

15  and instructors, plus home countries, military units, and classes taken or taught at

16  WHINSEC – the same information that DOD provided through FY 2004.  They do not seek

17  information regarding any individual's date of birth, place of birth, home address, marital

18  status, employment history (except for tenure at WHINSEC), medical history, or any other

19  information of the type generally considered to be "private" or "intimate."  The only personal

20  information that DOD seeks to withhold under Exemption 6 is the names and military units

21  of the students and instructors.

22         An agency's burden in justifying the withholding of a record under FOIA Exemption 6

23  "is an 'onerous' one."  Lawyers' Comm. for Civil Rights of S.F. Bay Area v. U.S. Dep't of

24  Treasury, 2008 WL 4482855 at *20 (N.D. Cal. Sept. 30, 2008) (quoting News-Press v. U.S.

25  Dep't of Homeland Sec., 489 F.3d 1173, 1198 (11th Cir. 2007)).  "[U]nder Exemption 6, the

26  presumption in favor of disclosure is as strong as can be found anywhere in the Act."

27  Washington Post Co. v. U.S. Dep't of Health & Human Servs., 690 F.2d 252, 261 (D.C. Cir.

28  1982), quoted in Yonemoto, 686 F.3d at 694.

United States District Court

For the Northern District of California

1     The mere fact that information "applies to a particular individual" is not sufficient to

2  support withholding information under Exemption 6.  Rather, the information must be of

3  such a nature that its disclosure "would constitute a clearly unwarranted invasion of

4  personal privacy."  5 U.S.C. § 552(b)(6).  In conducting that analysis, the court must first

5  determine whether disclosure would implicate a personal privacy interest that is "nontrivial"

6  or that is "more than . . . de minimis," which in turn requires an assessment of "both the

7  nature of the privacy interest at stake, and the likelihood that disclosure would lead to its

8  invasion."  Yonemoto, 686 F.3d at 693.  In addition, the threat to personal privacy that may

9  arise from the disclosure of the disputed records "must be nonspeculative."  Id. at 693-94.

10     The "personal privacy" contemplated by Exemption 6 "encompass[es] the

11  individual's control of information concerning his or her person," although it is not limited to

12  that type of information.  Id. (quoting U.S. Dep't of Justice v. Reporters Comm. for Freedom

13  of Press, 489 U.S. 749, 763 (1989)).  For example, in National Archives and Records

14  Admin. v. Favish, 541 U.S. 157 (2004), the Supreme Court held that FOIA recognizes

15  surviving family members' right to personal privacy with respect to their close relative's

16  death-scene images.  Id. at 170.  If the agency cannot establish that disclosure would lead

17  to an invasion of a non-trivial personal privacy interest protected by Exemption 6, it must

18  disclose the record.  Yonemoto, 686 F.3d at 694.

19     If, on the other hand, the agency does make the required threshold showing

20  regarding a privacy interest, the public interest in disclosure becomes relevant, and the

21  court must balance the privacy interest identified against the extent to which disclosure of

22  the particular information sought "would she[d] light on the agency's performance of its

23  statutory duties, or otherwise inform citizens what their government is up to."  Id. (quoting

24  Bibles v. Oregon Natural Desert Ass'n, 519 U.S. 355, 355-56 (1997) (per curiam)).

25     Plaintiffs contend that Exemption 6 does not justify keeping secret the names and

26  military unit information of WHINSEC students and instructors.  First, plaintiffs argue that

27  defendants have not made a threshold showing that disclosure of the records would

28  compromise a substantial, as opposed to a de minimis, privacy interest.  Plaintiffs note that

16

United States District Court

For the Northern District of California

1   courts have held that the government cannot prevail on withholding under Exemption 6

2   where Congress has expressed a statutory policy of disclosure.  See, e.g., Washington

3   Post Co., 690 F.2d at 263-65; Dow Jones & Co. v. U.S. Dep't of Justice, 724 F.Supp. 985,

4   991 (D.D.C. 1989).  Here, plaintiffs assert, a statute passed by Congress – § 1083 of the

5   National Defense Authorization Act of 2010 – requires disclosure of specified records

6   (names of WHINSEC attendees and instructors for FY 2009-2010) with no exception for

7   privacy.  They argue that § 1083 expresses Congress' view that the disclosure of names of

8   WHINSEC students and instructors is desirable and not an intrusion on personal privacy.

9        Plaintiffs also contend that disclosure of information about an individual's

10  professional or business activities does not impinge on cognizable interests in personal

11  privacy.  Exemption 6 was developed to protect details of personal and family life, not

12  information regarding professional activities.  See Sims v. Central Intelligence Agency, 642

13  F.2d 562, 573-75 (D.C. Cir. 1980); Cohen v. E.P.A., 575 F.Supp. 425, 429 (D.D.C. 1983).

14  Plaintiffs contend that the requested information concerns professional activities engaged

15  in by the foreign military students attending WHINSEC, and by their instructors.  They

16  assert that because disclosing the names, military units, and other information about the

17  students and instructors provides no intimate details about their personal or family lives,

18  DOD cannot show a cognizable interest in privacy, let alone that disclosing this information

19  would constitute a "clearly unwarranted" invasion of privacy.

20       Plaintiffs argue further that the WHINSEC attendees have no reasonable

21  expectation of privacy because they were never told that their attendance at a publicly

22  funded U.S. military school would remain confidential, or that their names and assigned

23  military units would not be made public.  Moreover, plaintiffs assert, DOD routinely

24  disclosed this information in response to FOIA requests up until FY 2004, including names

25  and instructors going back to 1946, and has also disclosed names of some students and

26  instructors on the WHINSEC website, and on its Facebook page, in "meet and greet"

27  sessions with human rights groups, and in WHINSEC's monthly newsletter.  In addition, the

28  names of Costa Rican WHINSEC attendees are published in that country's official

17

United States District Court

For the Northern District of California

1    newspaper, by law; and DOD has disclosed the names and units of Columbian military

2    students trained at West Point from 1990 to 2008.

3         Plaintiffs contend that even if defendants could establish that the WHINSEC

4    instructors and students have some minimal privacy interest in the fact that they are

5    affiliated with WHINSEC, the public's interest in obtaining the requested information plainly

6    outweighs any such privacy interest asserted by the government.  In performing the

7    balancing test, the court must "keep in mind that the invasion of privacy must be 'clearly'

8    unwarranted," which weighs heavily in favor of disclosure.  Church of Scientology, 611 F.2d

9    at 746.  In addition, the privacy interest must be "substantial" to override the presumption in

10   favor of disclosure.  National Ass'n of Homebuilders v. Norton, 309 F.3d 26, 37 (D.C. Cir.

11   2002).

12        Plaintiffs argue that the public interest requirement is satisfied here because they

13   have shown that the records will further "the strong public interest in knowing 'what the

14   government is up to,'" id., specifically, the interest of the general public, and those involved

15   in news organizations and other media, human rights organizations, academia, government

16   (including Congress), and assorted other non-profits.  Plaintiffs assert that the monitoring of

17   who passes through WHINSEC is essential to determining whether DOD and the State

18   Department are performing their statutory duties to vet WHINSEC participants for past

19   human rights abuses before they are approved to attend or teach at WHINSEC.

20        Plaintiffs contend that set against these public interests, which plaintiffs contend are

21   "weighty," is an unsubstantial, unsubstantiated, and legally untenable claim of personal

22   privacy.  Plaintiffs argue that because DOD cannot meet its burden of proof to establish the

23   existence of an exemption, and because these speculative unsupported interests do not

24   "clearly outweigh" the public's interest in access to the information, DOD's Exemption 6

25   claim cannot be sustained.

26        In response, defendants argue that the privacy interests of WHINSEC students and

27   instructors in their names and military units are more than de minimis, and clearly outweigh

28   the public interest in disclosure.  Defendants cite two district court cases holding that

1   military personnel have a significant privacy interest in their names and other identifying

2   information, due to potential security risks from releasing such information.  See

3   Schoenman v. F.B.I., 575 F.Supp. 2d 136, 160 (D.D.C. 2008); Hiken v. Dep't of Defense,

4   521 F.Supp. 2d 1047, 1065 (N.D. Cal. 2007).  In both cases, the privacy interests at issue

5   were asserted on behalf of U.S. military personnel only.

6        In Schoenman, the court considered whether certain Air Force members had a

7   legitimate privacy interest in their names and addresses, which information had been

8   redacted from documents provided to the plaintiffs pursuant to a FOIA request.  The court

9   noted that the disclosure of names and addresses does not pose an inherent threat to the

10  privacy of those listed, but that the circumstances of each case must be considered.

11  Schoenman, 575 F.Supp. at 160.  Because of a DOD policy change following the events of

12  September 11, 2001, under which DOD does not routinely release the names and other

13  personal details of military and civilian personnel, for security reasons, the court found that

14  the privacy interest claimed by the Air Force was not de minimis.  Id. at 161.

15       In Hiken, the court considered whether DOD should be required to disclose the

16  names of military personnel involved in an incident during the Iraq War, in which shots were

17  fired at a vehicle carrying an Italian journalist.  The court found that the privacy interests at

18  stake were significant because disclosure of the names might create a risk of harm or

19  retaliation.  Id. at 1064-65.

20       In this case, defendants argue, the WHINSEC students and instructors have more

21  than a de minimis privacy interest in their names and military units because disclosure of

22  that information risks exposing them to "violence and harassment."  Defendants claim that

23  withholding documents that contain the names and military units of WHINSEC students and

24  instructors protects those personnel from terrorist, foreign intelligence, and criminal threats

25  that may arise due to the nature of their work.

26       Defendants' primary support for these assertions is the declaration provided by Mr.

27  Rials, the WHINSEC Public Affairs Specialist.  Mr. Rials states that FOIA requests for

28  names have been propounded on SOA and WHINSEC since 1993, and that until 2005, the

19

United States District Court
For the Northern District of California

1   names of international students were released to the public.  However, he claims that

2   WHINSEC has never released the names of U.S. personnel pursuant to a FOIA request,

3   and that in 2005, the Army's General Counsel determined that international personnel

4   should have the same rights to privacy as U.S. personnel, in light of concerns for the safety

5   of persons who may be actively involved in law enforcement missions, particularly anti-drug

6   activities.  Thus, according to Mr. Rials, since 2005, names have been redacted from

7   documents released concerning all WHINSEC students.

8        Mr. Rials asserts that there are a number of risks associated with releasing the

9   names of WHINSEC students, instructors, and guest instructors.  He contends that

10  Defense Intelligence Agency assessments indicate that public disclosure of WHINSEC's

11  records may increase the threat to Latin American military and law enforcement personnel

12  from the intelligence and security apparatuses of countries hostile to U.S. interests and to

13  U.S. partner nations in the Western Hemisphere; from terrorist organizations operating in

14  the Western Hemisphere; and from drug trafficking organizations operating in the Western

15  Hemisphere.  DOD recognizes these significant risks, and asserts that for this reason it

16  currently proscribes the release of names and other personally identifying information of

17  personnel assigned within a particular unit.

18       Mr. Rials notes that in some countries, such as Mexico and Colombia, security

19  personnel and their families have been attacked after being identified in the media.  As an

20  example, he cites to March 2010 testimony by General Victor E. Renuart, Jr., former

21  Commander of the U.S. Northern Command.  General Renuart testified before the House

22  Armed Services Committee that in a recent raid conducted by the Mexican military on

23  Mexican drug cartel head Arturo Beltran Leyva, one of the military personnel was killed,

24  and after his identity was made public, his mother, wife, and children were killed.

25       Mr. Rials claims that DOD recently consulted with WHINSEC's participating nations

26  regarding its disclosure policy, and that the majority of participating nations either oppose

27  public disclosure of personally identifying information of students and instructors, or wish to

28  reserve the right to make decisions on such disclosures regarding their personnel.  He

United States District Court

For the Northern District of California

1    asserts that the majority of participating nations also indicate that public disclosure of the

2    names and other personally identifying information concerning their personnel may have

3    adverse effects on future participation in training programs at WHINSEC.

4          Defendants also contend that releasing the names and other information might

5    subject WHINSEC instructors and students to harassment, because of the "stigma"

6    attached to the former entity – the School of the Americas – and the public perception that

7    SOA was training Latin American military personnel to better engage in human rights

8    abuses.

9          As for WHINSEC's disclosure of the identities of some students and instructors – for

10   example, on its web site and its Facebook page, and in its newsletter – defendants

11   concede that individuals are sometimes identified on these sites, but claim that it is always

12   with the consent of the individuals involved; and that a newspaper that offers limited

13   identification of individuals also does so only with the individuals' consent.

14         In addition to Mr. Rials' declaration, defendants cite 32 C.F.R. § 518.13(f)(2), which

15   provides that U.S. Army components "shall ordinarily withhold lists of names (including

16   active duty military, civilian employees, contractors, members of the National Guard and

17   Reserves, and military dependents) and other personally identifying information" including

18   e-mail addresses and home addresses.  Defendants also cite a memorandum issued by

19   the Secretary of Defense, dated November 9, 2001, in which the Secretary stated that in

20   light of the attacks of September 11, 2001, all DOD components shall ordinarily withhold

21   lists of names and other personally identifying details of personnel currently or recently

22   assigned to a particular component, unit, organization or office within the DOD.

23         Based on this stated policy, defendants claim it would be reasonable for WHINSEC

24   instructors and students to expect that their names and units would remain private.

25   Defendants assert that the 2001 memorandum is sufficient to establish a "presumption of

26   non-disclosure," and that the court should give deference to DOD's determination that

27   individuals associated with DOD are entitled to have their names kept secret.

28         As for balancing the public and private interests, defendants contend that even if

United States District Court
For the Northern District of California

1   plaintiffs have identified significant public interests, they have not shown how obtaining the

2   names and military units of WHINSEC instructors and students is likely to advance those

3   interests.  The only relevant public interest in disclosure is the extent to which disclosure

4   would serve the core purpose of FOIA, which is "contribut[ing] significantly to public

5   understanding of the operations or activities of the government."  U.S. Dep't of Defense v.

6   Fed. Labor Relations Auth., 510 U.S. 487, 495 (1994) (quotation and citation omitted).  The

7   requested information must "shed[ ] light on an agency's performance of its statutory

8   duties."  Reporters Comm., 489 U.S. at 773.  "[I]nformation about private citizens . . . that

9   reveals little or nothing about an agency's own conduct" does not serve a relevant public

10  interest under FOIA.  Id.  The requesting party's intended use for the information is

11  irrelevant to the  analysis.  See id. at 771.

12       Here, defendants assert, while plaintiffs contend that disclosure of the names and

13  military units of the WHINSEC instructors and students will allow the public to determine

14  whether the Secretary of State is properly carrying out his/her duty to withhold U.S.

15  assistance, including training assistance, to foreign police or military units where there is

16  credible evidence of human rights abuses by those units, plaintiffs have failed to show how

17  such disclosures will be "likely to advance" those public interests.

18       Defendants argue further that there are substantial oversight policies in place with

19  regard to WHINSEC.  The Department of State vets all foreign nationals prior to issuing any

20  visa; and since FY 2005, DOD has provided to Congress (in classified format, and in

21  accordance with the National Defense Authorization Act for FY 2008) the names and other

22  data for all WHINSEC instructors and students, so Congress may monitor DOD's

23  compliance with the law.  In addition, the WHINSEC Board of Visitors provides external

24  oversight of WHINSEC's performance.  Defendants suggest that given these oversight

25  measures, plaintiffs' arguments regarding the asserted public interest are to no avail, and

26  that the court should find that Exemption 6 applies.

27       The court finds that defendants have not established that the WHINSEC students

28  and instructors have a substantial privacy interest in their names and military units – in

United States District Court
For the Northern District of California

1   particular the international students and instructors.  Given that there is no evidence that

2   any student or instructor at WHINSEC was promised that his/her participation in the

3   program would be kept confidential; the fact that prior to 2004, the DOD routinely provided

4   this same type of information in response to FOIA requests, without objection; the fact that

5   § 1083 of the National Defense Authorization Act of 2010 provided for disclosure of the

6   names of WHINSEC students and instructors in FY 2009 and 2010; and the fact that the

7   identities of faculty and students at WHINSEC is not routinely kept secret or confidential by

8   WHINSEC, the court finds that DOD has not met its burden of showing that the names and

9   military units of WHINSEC students and instructors are protected by a substantial privacy

10  interest.

11          At most, defendants have made a showing that some international students or

12  instructors might consider their names and military units to be private information, and

13  might object to the disclosure of that information.  However, "[t]he legislative history is clear

14  that Exemption 6 was directed at threats to privacy interests more palpable than mere

15  possibilities."  Rose, 425 U.S. at 380 n.19; see also Carter v. U.S. Dep't of Commerce, 830

16  F.2d 388, 391 (D.C. Cir. 1987).  As the Court indicated in Rose, the fact that a threat to

17  privacy is conceivable on some generalized, conjectural level is not sufficient to justify

18  evoking Exemption 6.  DOD's position appears to be that the court should simply defer to

19  the Secretary's determination that the information should be withheld.  This position is

20  clearly at odds with the entire premise of FOIA, which mandates a strong policy in favor of

21  disclosure.

22          DOD also appears to be suggesting that the court should also defer to Mr. Rials'

23  assessment of the WHINSEC individuals' privacy rights, and the risks that they might face if

24  their names were released.  The court finds, however, that Mr. Rials' assessment is largely

25  speculative, as he cites to no examples of anyone who was harmed because his name was

26  released pursuant to a FOIA request prior to 2005, when DOD was still releasing the

27  names.

28          The 2002 memorandum regarding disclosure of information about members of the

United States District Court

For the Northern District of California

1   military does not, on its face, apply to foreign individuals attending or working at WHINSEC,

2   or to civilian contractors.  Moreover, the memorandum does not establish a "policy" of

3   nondisclosure, but rather merely states a policy that after the events of September 11,

4   2001, nondisclosure will be given more serious weight in the analysis.  Finally, even after it

5   issued this memo, the DOD still continued to disclose the names of WHINSEC graduates

6   and instructors for the next four years.  It was only beginning with FY 2005 that DOD began

7   refusing to disclose the information.

8          As for 32 C.F.R. § 518.13(f)(2), this regulation plainly applies only to the release of

9   information regarding U.S. Army personnel or civilians connected in some way to U.S.

10  Army personnel, not information about military or civilian personnel of a foreign country.

11  It is also insufficient for purposes of this analysis for defendants to claim that the Army's

12  General Counsel "recognized" in 2005 that international personnel should have the same

13  privacy rights as U.S. personnel.  There is no evidence that this reflects official DOD policy,

14  and in particular, to the extent that it is intended to expand the scope of 32 C.F.R.

15  § 518.13, it is  ineffective.  Moreover, any such "policy" is arguably contradicted by the

16  Army General Counsel's disclosures of the names of foreign military students at West Point

17  during the same time period that WHINSEC has been withholding names.

18         Nor has DOD established that disclosure will cause a "clearly unwarranted" invasion

19  of personal privacy.  Establishing a clearly unwarranted invasion of privacy requires an

20  individualized, or at least a uniform, showing.  Defendants have not shown that students or

21  instructors uniformly had an expectation of privacy, particularly given that the information

22  was disclosed prior to FY 2004, and that § 1083 of the National Defense Authorization Act

23  required disclosure for FY 2009 and 2010.  The fact that defendants cite "safety reasons,"

24  but fail to provide any example that is relevant to WHINSEC, leads the court to conclude

25  that DOD has no examples.  The court finds that defendants' showing is not sufficient to

26  apply a blanket exemption.

27         Morever, defendants argue "safety" only in a generalized sense – not "invasion of

28  privacy" or "embarrassment" that would result from the disclosure of the names and military

24

United States District Court

For the Northern District of California

1  units.  Defendants have made no showing that the military status of the attendees is a

2  secret in their home countries.  In addition, the assertion that withholding is proper based

3  on a "clearly unwarranted invasion of privacy" is supported here solely by allegations of risk

4  of  violence.  Mr. Riels refers to an individual whose family was attacked after he was

5  identified in the Mexican media as a police officer.  While that circumstance may provide a

6  justification for shielding the identity of any law enforcement personnel anywhere, it does

7  not provide a sufficient basis for overriding the presumption of disclosure in FOIA.

8       Mr. Rials also refers to "international military personnel," but makes no distinction

9  between U.S. and foreign military personnel.  Mr. Rials states in his supplemental

10  declaration that the identities of students are disclosed, but only with their agreement.

11  Either the information implicates a substantial privacy interest, or it does not.  But to say

12  that some students and instructors allow their names and faces to appear publicly, while

13  others do not, suggests that the information is not truly "private."

14       With regard to the public interest, plaintiffs have shown that there has been

15  extensive media coverage, editorials, and scholarly works that have flowed from the prior

16  public disclosure of the names, military units, and other information about SOC and

17  WHINSEC personnel.  This use of the information is indicative of the public interest in

18  disclosure and in knowing what the government is up to.  When balanced against the

19  relatively weak showing of privacy, the interest of U.S. citizens is at least as strong.

20                                    **CONCLUSION**

21       In accordance with the foregoing, the court finds that plaintiffs' motion must be

22  GRANTED to the extent that plaintiffs seek a ruling that DOD improperly withheld the

23  requested information, and that defendants' motion must be DENIED to the extent that

24  DOD seeks a ruling that the withholding of the information was proper under Exemptions 3

25  and 6.

26       In particular, the court finds that DOD is not entitled to withhold the requested

27  information pursuant to FOIA Exemption 3, because the "national interest" criteria for

28  withholding under § 1083 of the National Defense Authorization Act of 2010 is insufficiently

United States District Court

For the Northern District of California

1    particular to qualify § 1083 as a withholding statute under that exemption.

2        The court finds further that DOD has not made a sufficient showing that it may

3    withhold the requested information under FOIA Exemption 6, as it has not established that

4    the privacy interests advanced are substantial, and has not shown through admissible

5    evidence that the release of this information would constitute a clearly unwarranted

6    invasion of personal privacy, in light of the strong public interest in access to this

7    information as shown on the record before the court.

8        As for the arguments raised at the hearing regarding the sufficiency of the search

9    and/or the sufficiency of the production of records, the court did not understand the cross-

10    motions to be seeking relief as to either of those issues.  If the court is mistaken, the parties

11    shall so advise the court in a joint written statement, to be submitted no later than May 20,

12    2013.

13        Finally, the court finds that plaintiffs' request for an order enjoining defendants from

14    withholding names and unit information of WHINSEC students and instructors for years

15    after the time period specified in the FOIA request is not properly before the court.

16        If this order fully adjudicates the issues presented by plaintiffs' FOIA request, the

17    parties shall submit a proposed form of judgment. If it does not, the parties shall submit a

18    status statement setting forth the remaining issues and a proposal for their resolution.  This

19    response is due no later than May 20, 2013.

20

21    **IT IS SO ORDERED.**

22    Dated: April 22, 2013

23                                  _____
                                   PHYLLIS J. HAMILTON
                                   United States District Judge

24

25

26

27

28